823 F.2d 626
 262 U.S.App.D.C. 218, 56 USLW 2068,
17 Envtl. L. Rep. 20,953,
13 O.S.H. Cas.(BNA) 1362,
1987 O.S.H.D. (CCH) P 27,985
 PUBLIC CITIZEN HEALTH RESEARCH GROUP, et al., Petitioners,
v.
William E. BROCK, Secretary of Labor, and John A.
Pendergrass, Assistant Secretary of Labor,
Occupational Safety and Health
Administration, Respondents,
Association of Ethylene Oxide Users, Intervenor
ASSOCIATION OF ETHYLENE OXIDE USERS, Petitioner,
v.
William E. BROCK, Secretary of Labor, and John A.
Pendergrass, Assistant Secretary of Labor,
Occupational Safety and Health
Administration, Respondents.
 Nos. 84-1252, 85-1014 and 84-1392.
 United States Court of Appeals,
District of Columbia Circuit.
 July 21, 1987.
 
 Petitions for Review of a Standard of the Occupational Safety and Health Administration.
 On Motion for an Order Enforcing the Court's Judgment and Adjudging Respondents to be in Civil Contempt.
 David C. Vladeck and Alan B. Morrison, Washington, D.C., were on the motion of petitioners in Nos. 84-1252 and 85-1014.
 Robert E. Kopp, Director, and Leonard Schaitman, Asst. Director, Appellate Staff, Civ. Div., Dept. of Justice, Alfred R. Mollin, Atty., Dept. of Justice, George R. Salem, Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, Dept. of Labor, Joseph M. Woodward, Counsel for Appellate Litigation, Dept. of Labor, and Laura V. Fargas, Atty., Dept. of Labor, Washington, D.C., were on respondents' response to the motion.
 Before ROBINSON, Circuit Judge, and WRIGHT and McGOWAN, Senior Circuit Judges.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 Petitioners Public Citizen Health Research Group, et al., in Nos. 84-1252 and 85-1014 (hereinafter petitioners) allege that the Occupational Safety and Health Administration has contemptuously and unreasonably delayed promulgation of a "Short-Term Exposure Limit" (STEL) for the toxin ethylene oxide, despite this court's specific order in Public Citizen Health Research Group v. Tyson, 796 F.2d 1479 (D.C. Circuit 1986). This allegation places the court in a delicate position. Although the courts must never forget that our constitutional system gives the Executive Branch a certain degree of breathing space in its implementation of the law, we cannot countenance maneuvering that merely maintains a facade of good faith compliance with the law while actually achieving a result forbidden by court order. We understand that technical questions of health regulation are not easily untangled. We understand that an agency's limited resources may make impossible the rapid development of regulation on several fronts at once. And we understand that the agency before us has far greater medical and public health knowledge than do the lawyers who comprise this tribunal. But we also understand, because we have seen it happen time and time again, that action Congress has ordered for the protection of the public health all too easily becomes hostage to bureaucratic recalcitrance, factional infighting, and special interest politics. At some point, we must lean forward from the bench to let an agency know, in no uncertain terms, that enough is enough.
 
 
 2
 At issue here, then, is whether that point has been reached. We conclude that it has, but that the court's proper role within the constitutional system counsels caution in fashioning a remedy.
 
 BACKGROUND
 
 3
 The history of OSHA's attempts to regulate ethylene oxide (EtO) is one of hesitation and lack of resolve. In January 1982, OSHA first issued an advance notice of proposed rulemaking for EtO in response to growing evidence of its toxicity. See 47 Fed.Reg. 3566 (1982). In 1983, this court found OSHA's delays in promulgating a final rule to be unjustifiable, and ordered the Administration to complete its rulemaking proceedings "within a year." Public Citizen Health Research Group v. Auchter, 702 F.2d 1150, 1154 n. 12 (D.C.Cir.1983) (per curiam ). OSHA subsequently published a proposed rule, 48 Fed.Reg. 17283, 17284 (1983), that included both a "Permissible Exposure Limit" (PEL) and a "Short-Term Exposure Limit" (STEL).
 
 
 4
 After extensive public hearings, OSHA was ready to issue a final rule on June 14, 1984. In compliance with Executive Order No. 12291, 3 C.F.R. 127 (1981), reprinted in 5 U.S.C. Sec. 601 note, at 431 (1982), OSHA sent the final rule to the Office of Management and Budget (OMB) for approval. But approval was not to be had. OMB balked at OSHA's inclusion of the short-term exposure limit, objecting primarily on the ground of cost-effectiveness. OSHA dutifully issued a final rule that had been sanitized of all mention of short-term exposure limits.
 
 
 5
 Almost immediately, petitioners challenged both the level of OSHA's ethylene oxide PEL and the agency's failure to include a STEL in the final regulation. Last July 25th, this court affirmed OSHA's PEL regulations, but determined that OSHA's decision to forego a STEL did not have adequate support in the rulemaking record. Public Citizen Health Research Group v. Tyson, 796 F.2d 1479 (D.C.Cir.1986). Our instruction to the agency on the need for a STEL was fairly simple:
 
 
 6
 On remand, we expect the agency to ventilate the issues on [the STEL] point thoroughly and either adopt a STEL or explain why empirical or expert evidence on exposure patterns makes a STEL irrelevant to controlling long-term average exposures.
 
 
 7
 796 F.2d at 1507. In contention presently is whether OSHA's failure to issue even a notice of proposed regulation in the nine months between issuance of our mandate and filing of the instant motion constitutes contempt of court, unreasonable delay under the Administrative Procedure Act, or both.
 
 DISCUSSION
 
 8
 This is a troubling case. We are mindful that OSHA's rulemaking determinations are "essentially legislative and rooted in inferences from complex scientific and factual data," United Steelworkers of America v. Marshall, 647 F.2d 1189, 1206 (D.C.Cir.1980), cert. denied sub nom. Lead Industries Ass'n v. Donovan, 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). They are thus entitled to great deference from the court. Public Citizen v. Auchter, 702 F.2d at 1156. At the same time we cannot help but note that OSHA's EtO regulations, first proposed in 1982, are not final in 1987, despite repeated orders and exhortations from this court. In fact, OSHA informs us that the final STEL regulations will not issue until March 1988, even assuming that the rulemaking process suddenly changes what has been its essential character and proceeds according to schedule. With lives hanging in the balance, six years is a very long time.
 
 
 9
 Petitioners contend that the Tyson opinion does not support OSHA's recent decision to undertake a full-blown rulemaking proceeding on the STEL issue. And even assuming rulemaking is permissible, they submit that OSHA's failure to issue a notice of proposed rulemaking in the months that have passed since this court's Tyson remand constitutes both contemptuous failure to comply with that order and unreasonable delay under the Administrative Procedure Act. OSHA responds that, in order to comply with Tyson, it decided a rulemaking was necessary and quickly contracted with a private firm to collect data on the STEL question. Any delay in the process, it says, stems from practical difficulties encountered by the contractor and from the very nature of the rulemaking process.
 
 
 10
 A contempt citation under these circumstances would be a draconian and disproportionate remedy. OSHA decided in good faith that the record required supplementation on the issue of the public health necessity of a STEL when a strict PEL is already in place. Viewed fairly, our mandate in Tyson does not preclude such supplementation. To the contrary, we specifically instructed OSHA "to ventilate [the STEL] point thoroughly." 796 F.2d at 1507. We see nothing in OSHA's record supplementation decision, therefore, that may properly be labeled "contemptuous" of our order. Even if Tyson did not require supplementation, it certainly did not preclude it.
 
 
 11
 Granted, OSHA's failure to issue a notice of proposed rulemaking simultaneously with hiring a contractor to supplement the record is more difficult to defend. After five years of struggle to promulgate a final EtO regulation, this court had hoped that OSHA would act with greater alacrity on our specific order to either promulgate a STEL or explain why a STEL was unnecessary. We are more than a little perturbed that OSHA chose to construe the Tyson opinion to allow close to two years for compliance. Nevertheless, we see bureaucratic inefficiency rather than bad faith as the source of OSHA's laggard pace in this regard.
 
 
 12
 Consequently, a finding of "unreasonable delay" under 5 U.S.C. Sec. 706(1) (1982)[1] would be more closely tailored than a contempt order to correct any deficiency in performance here. After all, once we have admitted the permissibility of record supplementation under Tyson, the timetable for STEL regulation inevitably stretches out beyond petitioners' wishes. But that is not to say any timetable, however dilatory, is reasonable. When lives are at stake, as they assuredly are here, OSHA must press forward with energy and perseverance in adopting regulatory protections. See Public Citizen v. Auchter, 702 F.2d at 1157-58.[2]
 
 
 13
 Deciding whether a particular set of agency actions constitutes "unreasonable delay" is a tricky proposition. Our sense of concern notwithstanding, we are loath to rush in to manage the details of OSHA's ethylene oxide rulemaking procedure. OSHA not only possesses enormous technical expertise we lack, but must juggle competing rulemaking demands on its limited scientific and legal staff. See, e.g., Farmworker Justice Fund, Inc. v. Brock, 811 F.2d 613, 633 (D.C.Cir.1987), vacated as moot, 817 F.2d 890 (D.C.Cir.1987) (ordering OSHA to promulgate farmworker field sanitation standard within 30 days of mandate); United Steelworkers of America v. Pendergrass, 819 F.2d 1263 (3d Cir., 1987) (ordering OSHA to issue a "hazard communication" standard within 60 days). This court should intervene to override agency priorities and timetables only in the most egregious of cases.
 
 
 14
 Fortunately, OSHA has presented to us a specific timetable in this case. OSHA represents that a final rule will issue in March 1988. Although we are disappointed with this target date, we cannot find any specific aspect of the proposed rulemaking schedule that is impermissibly slow, in light of the complexity of the health questions involved and OSHA's limited resources.
 
 
 15
 The five-year history of the EtO regulatory process convinces us, however, that the proposed timetable treads at the very lip of the abyss of unreasonable delay. In light of the fact that OSHA's timetable representations have suffered over the years from a persistent excess of optimism, we share petitioners' concerns as to the probable completion date of the rulemaking. Consequently, we find that any delay whatever beyond the proposed schedule is unreasonable.
 
 
 16
 Having made this determination, we must fashion an order that balances two competing concerns. On the one hand, we should avoid if possible any direct judicial meddling with the details of OSHA's rulemaking schedule. On the other, the public health, as defined by Congress, requires that we set a clear end point to the regulatory snarl that is the EtO short-term exposure limit rulemaking.
 
 
 17
 As a clarification of our mandate in Tyson, therefore, we order OSHA to adhere to the schedule set out in its response to petitioners' contempt motion. OSHA's final decision on the EtO short-term exposure limit regulation is to issue no later than March 1988. Failure to comply with this timetable may well expose OSHA to liability for contempt. Moreover, given OSHA's apparent reluctance to keep petitioners informed as to the progress of the STEL rulemaking, we order OSHA to submit to the court a concise progress report every 90 days from the order's date of issuance until the final rule is in place. With these two commands, we hope and expect that the court's Sisyphean efforts to force agency action on this matter will finally be at an end.
 
 
 18
 So ordered.
 
 
 
 [1]
 That provision of the Administrative Procedure Act gives the court power to "compel agency action unlawfully withheld or unreasonably delayed." See Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C.Cir.1984)
 
 
 [2]
 As we noted in Tyson, OSHA's PEL regulation, standing by itself, leaves exposed workers at significant risk. OSHA itself estimates that under the present one part-per-million PEL, ethylene oxide exposure will be responsible for 12-23 excess cancer deaths per 10,000 workers. See Tyson, 796 F.2d at 1502-03